# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| BLUE SPIKE LLC, <br> BLUE SPIKE INTERNATIONAL LTD., <br> WISTARIA TRADING LTD., <br><br> Plaintiffs, <br><br> v. <br><br> CHARTER COMMUNICATIONS, INC. <br><br> Defendant. | C.A. No. 19-158-LPS |

## MEMORANDUM ORDER

At Wilmington this **18th** day of **December 2019**:

WHEREAS, Blue Spike LLC, Blue Spike International Ltd., and Wistaria Trading Ltd. (collectively "Plaintiffs") have filed a suit for patent infringement against Charter Communications, Inc. ("Defendant"), alleging infringement of U.S. Patent Nos. 7,475,246, 8,739,295, and 9,934,408 (Counts I-III) (collectively, the "Secure Server patents"); 7,159,116 and 8,538,011 (Counts IV-V) (collectively, the "Trusted Transaction patents"); 9,021,602 and 9,104,842 (Counts VI-VII) (collectively, the "Watermarking patents"); 8,224,705, 7,287,275, 8,473,746, RE 44,222, and RE 44,307 (Counts VIII-XII) (collectively, the "Packet Transfer patents") (D.I. 1);

WHEREAS, Defendant moved to dismiss, under Federal Rule of Civil Procedure 12(b)(6), Plaintiffs' Counts I-III for failure to state a plausible claim of either direct or indirect infringement of the Secured Server patents (*see* D.I. 17 at 9-12);

WHEREAS, Defendant also moved to dismiss, under Rule 12(b)(6), Plaintiffs' Counts IV-XII for failure to state a claim on the bases that the Trusted Transaction, Watermarking, and Packet Transfer patents are invalid under 35 U.S.C. § 101, because they are allegedly directed to

unpatentable subject matter (*see* D.I. 17 at 12-30);

WHEREAS, the Court has considered the parties' briefs and related filings (D.I. 17, 21, 22, 24, 28, 28); and

WHEREAS, on November 26, 2019, the Court heard oral argument on Defendant's motion to dismiss (*see* Nov. 26, 2019 Hrg. Tr. (D.I. 34) ("Tr."));[1]

**NOW, THEREFORE, IT IS HEREBY ORDERED** that Defendant's motion to dismiss (D.I. 16) is **GRANTED IN PART** and **DENIED IN PART**, as follows:

1. The motion is DENIED with respect to Counts I and III, alleging infringement of the '246 and '408 Secure Server patents. These Counts remain in the case.

2. The motion is GRANTED with respect to Count II, alleging infringement of the '295 Secure Server patent. This Count is DISMISSED WITHOUT PREJUDICE to Plaintiffs having an opportunity to file an amended complaint and attempt again to state a claim for infringement of the '295 patent.

3. The motion is DENIED with respect to Counts IV and V, alleging infringement of the '116 and '011 Trusted Transaction patents. These Counts remain in the case.

4. The motion is DENIED with respect to Counts VI and VII, alleging infringement of the '602 and '842 Watermarking patents. These Counts are not dismissed.

5. The motion is GRANTED with respect to Count IX, alleging infringement of the '275 Packet Transfer patent. This Count is DISMISSED.

---

[1] Chief Judge Leonard P. Stark and Magistrate Judge Christopher J. Burke jointly presided throughout the argument.

6. The motion is TAKEN UNDER ADVISEMENT with respect to Counts VIII, X, XI, and XII, alleging infringement of the '705, '746, '222, and '307 Packet Transfer patents. The parties shall continue to comply with the briefing schedule set out at D.I. 32.

The Court's Order is consistent with the following bench ruling announced at the conclusion of the November 26 hearing (*see* Tr. at 68-81):

> I do want to note before I jump into analyzing the patents that what the Defendant has done here is, I think, fairly characterized as pretty aggressive. One might say the same about the Plaintiffs, to assert 12 patents .... [B]ut to move in a single motion to get rid of 12 patents, nine on [Section] 101 grounds and three more on [Rule] 12(b)(6) pleadings standards and only have a 30 page brief, which, of course, is actually an increase in our page limits, to do that is asking a lot of the Court ....
>
> [Y]ou encounter some hurdles, not just that you have very limited pages to address 12 separate patents, but also we're very, very early in the case. That means[,] in my view, coming from the law, of course, with Rule 12 motions, essentially doubts are going to be resolved in favor of the Plaintiffs at this stage of the case. That has factored into my analysis, as I think is proper under the law.
>
> That said, as a preface, let me first go through the [Section] 101 motions.
>
> I'm adopting by reference the standards that I set out in my opinion in *DiStefano Patent Trust v. LinkedIn* .... [2] Everything I'm going to say is substantively consistent with that law as set out there.
>
> [I]t may be helpful for you to know that as I sat down to look at these motions, I had a specific set of questions in mind that I think are fully consistent with the legal standards that are set out in *DiStefano* and [by] the Federal Circuit .... [B]asically it was a series of questions that I asked myself for each of the patents.
>
> At step 1 of the *Alice* and *Mayo* test,[3] I first asked: Is the

---

[2] *DiStefano Patent Trust III, LLC v. LinkedIn Corp.*, 346 F. Supp. 3d 616 (D. Del. 2018), *aff'd* 784 F. App'x 785 (Fed. Cir. Nov. 12, 2019) (Rule 36).

[3] *Alice Corp. Pty. Ltd v. CLS Bank Int'l*, 573 U.S. 208, 217-18 (2014); *Mayo*

3

purported abstract idea identified by the defendant actually an abstract idea? If what is articulated as an abstract idea is not an abstract idea, then the motion should be denied.

Still at step 1, I then ask myself, if the defendant has stated an abstract idea, does that abstract idea fairly capture what the challenged claim is actually directed to? If it doesn't, then the motion is denied.

Then turning to step 2, . . . if [the defendant] has fairly stated an abstract idea, that fairly captures what the claim is directed to, can I tell at this early stage of the case, before claim construction, before any factual discovery, can I tell that the claims do not capture any inventive concept? Or another way of asking that is, is it already clear at this stage of the case that the claims are directed wholly to conventional[,] routine[,] and well-understood subject matter? If I'm not persuaded of these things, then the motion is denied.

Now, mind you, if an inventive concept [is] identified in the specification but not captured in the claims, that inventive concept does not save the eligibility of the claims. And, if the inventive concept is really just the conventional use of computer technology and does not improve the functioning of the computer, then that also would not save the eligibility of the claims. . . .

Now, turning to the actual patents that you've argued about today.

First, the Trusted Transaction patents, the '116, and the '011 patents. At this stage of this case, I am not persuaded by Defendant that its sole preferred claim for analysis, the '116 patent claim 14, is representative of both challenged claims. . . . I have . . . consider[ed] both '116 claim 14, as well as '011 . . . claim 35. However, I have decided that I am denying this motion with respect to these patents. So it turns out that my analysis can fairly be identical for both asserted claims. That is, I find that Defendant's motion fails with respect to both Trusted Transaction patents for the same reason.

[T]hat reason is that at step 1 . . . I am not persuaded by Defendant that the claims are directed to an abstract idea. These are the patents for which, in the opening brief, the Defendant characterized the abstract idea as "authenticating information via a

---

*Collaborative Serv. v. Prometheus Labs., Inc.*, 566 U.S. 66 (2012).

4

watermark," and that did not initially strike me as necessarily an abstract idea. . . . [M]aybe that was the same view that the Defendant had because in the reply brief, Defendant changed the purported abstract idea to "increasing trust in an economic transaction," and that latter articulation does seem more abstract, but the change from the Opening to the Reply brief . . . does raise some concerns. But, that's not the basis on which I'm denying the motion.

The reason I'm denying the motion, and much more importantly, is that I'm not persuaded that either articulation of the purported abstract idea fairly characterizes what the claims are directed to. For instance, I see in the claims, or at least in the . . . claim . . . alleged by Defendant as being representative, the concept . . . of steganographic ciphers. I take that to be a type of watermarking characterized by having cryptography hidden in plain view. Steganographic ciphers, however, I don't see . . . being captured in Defendant's articulated abstract idea, so I don't think, again, that the articulated abstract idea is fair to the claims.

. . . [G]iven that conclusion, I need not and do not proceed to step 2 . . . .

That takes me then to the Watermarking patents. This is the '602 and '842 patents. I have pretty much the same thing to say about the representative claim dispute. I'm not persuaded by the Defendant that I can limit my analysis to the '602 patent, claim 1. I . . . also have to consider the '842 patent, claim 1.

Here, a few things to say about step 1. The articulated abstract idea [--] requiring a key to access the software application [--] I do think that that is an abstract idea. The *SmartFlash*[4] decision relied on by the Defendant, among other cases, supports this conclusion.

But the remainder of the step 1 analysis, I do have doubts about, meaning I'm not sure that this admittedly abstract idea is fair to the claims. I think there is an argument . . . as to whether this abstract idea is really what the claim is directed to, especially because the patent seems to say that this generally broad concept is not what the patentee invented . . . . [I]t would . . . seem . . . an odd result that the claims are fairly and truly directed to something that the specification specifically says the patentee did not invent. But I need not decide this step 1 question because in my view,

---

[4] *Smartflash LLC v. Apple Inc.*, 680 F. App'x 977 (Fed. Cir. 2017).

5

Defendant's motion fails at step 2.

Now, at step 2, there is a tough question . . . .

. . . I'm answering the tough step 2 question against the Defendant at this stage. The specification discusses something that it characterizes as a counterintuitive solution to the copying problem. This discussion can be found at least at the '602 patent, column 7, lines 22 to 29. And that counterintuitive idea I understand to be in general not attempting to stop copying, but carrying forward licensing information to descendent copies and preventing access without necessary licensing information. So in this regard, this specification is unlike that of many patents that have been stricken down on 101 challenges which have specifications that say, hey, what we're doing is conventional and you can use wholly conventional computer technology to do it. This patent isn't like [that]. This patent has a specification that says we're doing something different and counterintuitive and we're doing it to solve [a] problem in computer technology.

Now, it doesn't seem to me that the Defendant is actually challenging that these things may be nonconventional, nonroutine, maybe even not well-understood. Instead, what Defendant is arguing, and I think it is a good argument, is we're not clear on where any of this purported inventive concept is captured in the claims. I do understand the law to require at step 2 that the inventive concept be captured in the claims. . . . I reject Plaintiffs' argument . . . that it could be sufficient that if you practice the claims, sometimes you will have as a result improved computer functionality. In my view, that is not enough. It has to be a requirement of the claims to be captured by the claims in order to satisfy step 2.

So on these patents, the question is: Can I say today that the purported improvement in computer functionality is not captured in the claims? And, I have not been able to say that it is not captured in the claims, so the Defendant has not met [its] burden today. Instead, I can see that the claims appear to describe a relationship between the application software and a license code. And I can see that the Plaintiffs says that the claims capture the inventive concept discussed in the specification. At this early stage, I'm not prepared to say that what the Plaintiffs [are] telling me is wrong. So I will deny the motion.

And I will deny the motion as to both asserted claims of the patents in this group . . ., given that the Defendant was content for its motion to rise or fall based on analysis of just the one claim.

6

So then I turn next to the packet transfer patents: the '705, '275, '746, '222 and the '307 patents. I will have more to say about the representative claim dispute in a moment. With respect to the one claim we have focused on, claim 1 of the '275 patent, the one that the Defendant contends is representative, with respect to that one claim, the motion is granted.

At step 1, I agree that Defendant has identified a purported abstract idea: watermarking data packets to authenticate them. I think this is an abstract idea, and I also think it fairly characterizes the supposedly representative claim. . . .

At step 2, I will acknowledge that I did look at the Lee expert declaration [D.I. 22], but even looking at it I am persuaded that no inventive concept is captured in this claim. The Plaintiff[] in its briefing point[s] to portions of the specification of the '275 patent, particularly at columns 4, 9, and 10, that speak to using watermarks to, for example, prioritize data traffic or using watermarking as the means by which a router applies a different quality of service with regard to a data exchange. The problems here, though, are that, for instance, for this quality of service or QOS inventive concept, that concept is not even a requirement of the claim. And in the Court's view, as I've already said, that cannot satisfy step 2. It's not captured in the claim. And, similarly, the Plaintiffs have failed to identify any plausible way in which these inventive concepts are captured in the claims.

It also seems to me that there is a preemption problem if I said that this patent claim survives Section 101 . . . . The claim essentially seems to consist of breaking data into packets and marking at least one those packets, and without more, and I'm not seeing the "more," that I think would raise preemption concerns.

Now, coming back to the representative claim issue. I'm not prepared today, I'm not persuaded yet today, that one claim in this case, that one claim of one of five packet transfer patents, is fully and fairly representative of the asserted claims of all five patents. I'm not saying that couldn't be the case. Even here, I'm certainly not saying as a matter of law that couldn't be the case; and I recognize the specification is identical among the five patents. . . . [B]ut I'm not prepared to invalidate today all five asserted claims and five asserted patents based on careful analysis of just one purportedly representative claim in one of those patents. But I'm also not persuaded that there isn't the very same flaw for the other four patents. . . . [Still,] I do think I should, and I am going to, give the Plaintiffs one last opportunity to try to persuade me that the other four patents, or at least one of them, if not more,

7

should have a different fate than the '275 patent.

... I'm going to give the Plaintiffs a chance to file just a short letter brief now knowing what I think of step 1 and knowing what I think of step 2 and see if Plaintiffs can identify for me where these inventive concepts are captured in the claims of one or more of the four other packet transfer patents.... [O]f course, [I] will give the Defendant a chance to respond in kind. And, if Plaintiffs fail at the end of all that, then I will extend this ruling to the remaining Packet Transfer patents.

Finally, the Secure Server [patents]. These are the ones challenged under basically the *Iqbal / Twombly* standard . . . .[5] I'm adopting and applying the law as set out in Judge Burke's *North Star Innovations v. Micron* decision.[6] In essence, on a motion to dismiss, I must take all well-pleaded factual allegations as true. I need not credit conclusions of law or merely conclusory factual allegations. And in order for the plaintiff to state a claim of direct patent infringement, the plaintiff must plausibly plead facts that show an accused instrumentality practices each of the claim's limitations.

I will apply this standard first to the '246 and '408 patents, and I have considered them together. And I'm denying the motion with respect to both the '246 and the '408 patents. I am not at this early stage persuaded that Plaintiffs have failed to allege a plausible claim of direct patent infringement under these two patents.

It seems to me that at least implicit in Defendant's arguments [for dismissal] are notions of the proper construction of certain claim terms such as, for example, "degrade," "authorized or non-authorized content," "receive." There are implicit claim construction positions I think embedded in Defendant's arguments. ... Defendant may very well prevail at a claim construction hearing and persuade me at that time that their constructions are correct, but what I infer to be Plaintiffs' contrary views do not strike me today as necessarily based on implausible claim construction positions.

And, related to this, there may be fact disputes about how

---

[5] *Ashcroft v. Iqbal*, 556 U.S. 662 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007).

[6] *North Star Innovations Tech., Inc. v. Micron*, 2017 WL 5501489 (D. Del. Nov. 16, 2017).

the accused set-top boxes work, perhaps including how they interact with wires and users and other portions of a network or, more pertinently, there may be fact disputes in how these boxes accept and receive, or do not accept and receive, HD and SD signals. I just am not persuaded today at this stage that all of that has to be resolved against Plaintiffs. I'm not persuaded that Plaintiffs have failed to state a claim.

      Finally, turning to the '295 patent. The motion here is granted but without prejudice to Plaintiffs having an opportunity to file an amended complaint and attempt to state a claim of patent infringement under the '295 patent.

      I have to say that Plaintiffs' brief was particularly unhelpful on this patent since, due to a typographical error, it did appear from the answering brief that Plaintiffs [were] changing [their] infringement theory from what was in the complaint . . . . [T]oday, Plaintiffs clarified [they were] not actually changing [their] theory but [were] standing on the theory stated in the complaint.

      I understand that theory to be that the claim requires an LSC configured to receive a first dataset that includes data defining first content. And I understand that the theory of infringement of that limitation [is] set out in paragraph 100 of the complaint[:] namely, that allegedly the data associated with a channel is the first dataset, and the channel lineup is the alleged data defining the first content. . . . [I]t seems unlikely to me that the channel lineup would be included in the data associated with the channel[,] which seems to be Plaintiffs' theory. It does seem unlikely that the Defendant would essentially send all of that data within each channel, and I don't see how that theory yet is really adequately and plausibly articulated in the complaint, but I can't say that it's impossible. . . . [T]herefore, more importantly, I can't say that amendment would be futile. So I will give Plaintiffs the chance to amend.

<br>

_____
HONORABLE LEONARD P. STARK
UNITED STATES DISTRICT JUDGE